Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

Scott M. Harris
State Bar No. 011524
Scott M. Harris, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:   (602) 252-7400
Facsimile:    (602) 795-5610
email: harris@smharrislaw.com

*Attorneys for Plaintiff Linda Hetman*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Linda Hetman,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>The Hartford Life and Accident Insurance Company, Sysco Corporation, Sysco Corporation Disability Plan,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Linda Hetman (hereinafter referred to as "Plaintiff"), by and through her attorneys, Scott E. Davis and Scott M. Harris, and complaining against the Defendants, she states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Sysco Corporation (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy which was fully insured by The Hartford Life and Accident Insurance Company (hereinafter referred to as "Hartford"). The specific Hartford group disability policy is known as Group Policy No.: GLT395140 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Hartford policy was to provide disability insurance for its employees. Upon information and belief, the Hartford policy may have been included in and part of an employee benefit plan, specifically named the Sysco Corporation Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Hartford functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the

1  Plan may not have made a proper delegation or properly vested fiduciary authority or power
2  for claim administration in Hartford.

3       5.     Upon information and belief, Plaintiff believes Hartford operated under a
4  conflict of interest in evaluating her long term disability claim due to the fact that it operated
5  in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as
6  the payor of benefits; *to wit*, Hartford's conflict existed in that if it found Plaintiff was
7  disabled, it was then liable for payment of her disability benefits.

8       6.     The Company, Hartford and the Plan conduct business within Maricopa
9  County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

11       7.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28
12  U.S.C. §1391.

### *Nature of the Complaint*

14       8.     Incident to her employment, Plaintiff was a covered employee pursuant to
15  the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7).
16  Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to
17  §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits
18  she may be entitled to as a result of being found disabled.

19       9.     After working for the Company as a loyal employee, Plaintiff became
20  disabled on or about January 19, 2012 due to serious medical conditions and was unable to
21  work in her designated occupation as a Merchandiser. Plaintiff has remained disabled as
22  that term is defined in the relevant policy continuously since that date and has not been able
23  to return to any occupation as a result of her serious medical conditions.

1  10. Following her disability, Plaintiff applied for short term disability benefits which were approved, paid and have been exhausted. Plaintiff then filed for long term disability benefits under the relevant policy which was administered by Hartford, meaning it made the decision with regard to whether Plaintiff was disabled.

11. Upon information and belief, the relevant Hartford policy and definition of disability governing Plaintiff's long term disability claim is as follows:

"Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:
1. Your Occupation during the Elimination Period;
2. Your Occupation, for the 12 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-Disability Earnings; and
3. after that, Any Occupation."

12. In support of her claim for long term disability benefits, Plaintiff submitted to Hartford medical records from her treating physicians supporting her disability as defined by the relevant Hartford policy.

13. Hartford approved Plaintiff's long term disability claim and paid Plaintiff long term disability benefits for the period of July 17, 2012 through July 17, 2013. In a letter dated July 11, 2013, Hartford notified Plaintiff it was terminating her long term disability benefits beyond July 17, 2013.

14. As part of its review of Plaintiff's claim for disability benefits, Hartford obtained a medical records only "paper review" of Plaintiff's claim from Dr. Jamie Lewis.

15. Upon information and belief, Plaintiff believes Dr. Lewis is a long time medical consultant for the disability insurance industry and Hartford. As a result, Plaintiff believes Dr. Lewis may have an incentive to protect her own consulting relationships with the disability insurance industry and Hartford by providing medical records only paper

reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

16. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the July 11, 2013 termination of her long term disability benefits and, in support of her appeal, Plaintiff submitted additional medical, vocational and lay witness evidence demonstrating she met any definition of disability set forth in the relevant Hartford policy.

17. In support of her appeal, Plaintiff submitted to Hartford a narrative letter dated November 29, 2013 from her current treating physician, a board certified pain specialist, who opined, "A reasonable manager would not hire [Plaintiff] because of physical limitations."

18. Plaintiff also submitted to Hartford a Functional Capacity Evaluation report dated October 16, 2013 wherein after an extensive evaluation, a qualified physical therapist determined, "…my opinion is [Plaintiff] would not be able to perform <u>sedentary work</u> consistently on a regular, full-time or even part-time basis" (original emphasis).

19. Further supporting her appeal, Plaintiff submitted to Hartford a vocational report from a certified vocational expert dated December 31, 2013, who after reviewing Plaintiff's medical evidence and interviewing Plaintiff concluded, "…it is my vocational opinion that [Plaintiff] is unable to meet the material job duties of her prior occupation as a Buyer as well as any other sedentary occupation that may exist within the national economy…"

20. In addition to the medical records and reports submitted to Hartford, Plaintiff submitted five sworn affidavits from her husband, mother, longtime friends and prior co-

1 worker who confirmed Plaintiff is unable to work in any occupation and her medical
2 condition has not improved in any way since her date of disability.

3     21.    During the administrative review of Plaintiff's claim, she also applied for and
4 received Social Security disability benefits through the Social Security Administration
5 (hereinafter referred to as the "SSA").

6     22.    The SSA found Plaintiff became disabled from engaging in any gainful
7 occupation which may have existed in the national economy as of January 2012. Plaintiff
8 submitted to Hartford a copy of her September 21, 2012 Notice of Award from the Social
9 Security Administration. Plaintiff's claim was approved by the Social Security
10 Administration prior to an Administrative Law Judge hearing.

11     23.    The SSA's definition of disability is more stringent and difficult to meet than
12 the aforementioned definition of disability in the Hartford policy for the first 12 months of
13 disability and substantially similar to the policy's definition of disability after the first 12
14 months of disability. Therefore, the SSA's approval of Plaintiff's claim is relevant evidence
15 for this Court to consider with regard to the lawfulness of Hartford's decision to deny
16 Plaintiff's benefits and in the process, not properly evaluating SSA's decision or giving it
17 appropriate weight in its determination of Plaintiff's claim.

18     24.    As part of its review of Plaintiff's claim for long term disability benefits,
19 Hartford obtained a medical records only "paper review" of Plaintiff's claim from Dr.
20 Phillip Marion.

21     25.    Upon information and belief, Plaintiff believes Dr. Marion is a long time
22 medical consultant for the disability insurance industry and Hartford. As a result, Plaintiff
23 believes Dr. Marion has have an incentive to protect his own consulting relationships with
24 the disability insurance industry and Hartford by providing medical records only paper

1  reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

26. In a letter dated March 20, 2014, in order to engage Hartford in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Hartford and the opportunity to provide these reviews to her treating physicians for their response prior to Hartford rendering a final determination in her claim.

27. Prior to its final denial, Hartford never shared with Plaintiff the report authored by Dr. Marion and never engaged Plaintiff or her treating medical providers in a dialogue so she could either respond to Dr. Marion's report and/or perfect her claim. Hartford's failure to provide Plaintiff with the opportunity to respond to Dr. Marion's report precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

28. In a letter dated April 21, 2014, Hartford notified Plaintiff it had denied her claim for long term disability benefits under the policy. In the letter, Hartford also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

29. In evaluating Plaintiff's claim on appeal, Hartford had an obligation pursuant to ERISA to administer Plaintiff's claims "solely in her best interests and other participants" which it failed to do. [1]

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone,

30. Hartford failed to adequately investigate Plaintiff's claim and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Hartford's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claims is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

31. Plaintiff believes Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claim; failing to have her examined by a medical professional when the policy allowed for an examination; providing one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by her and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

32. Plaintiff further believes the reason Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Hartford undertook as decision maker and payor of

---

489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

benefits which created an inherent conflict of interest and this conflict may also be the reason the Company and/or Plan retained Hartford to insure and administer Plaintiff's disability claim.

33. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Hartford and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of any conflict of interest which may have impacted or influenced Hartford's decision to deny her claim.

34. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Hartford as referenced herein are so flagrant they justify *de novo* review.

35. As a direct result of Hartford's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

36. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

37. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

1      WHEREFORE, Plaintiff prays for judgment as follows:

2      A.      For an Order requiring Defendants to pay Plaintiff her long term disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the Hartford policy from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

       B.      For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

       C.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

       D.      For such other and further relief as the Court deems just and proper.

DATED this 2nd day of June, 2014.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
      Scott E. Davis
      Attorney for Plaintiff